1  David C. Wright, State Bar No. 177468
   dcw@mccunewright.com
2  Mark I. Richards, State Bar No. 321252
   mir@mccunwright.com
3  **McCune Wright Arevalo LLP**
   3281 East Guasti Road, Suite 100
4  Ontario, California  91761
   Telephone: (909) 557-1250
5  Facsimile: (909) 557-1275

6  Attorneys for Plaintiff and the Putative Class

7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  JEFFREY SHAW, on behalf of himself          Case No: 5:19-cv-1830
    and all others similarly situated,
12                                               **CLASS ACTION COMPLAINT**
13              Plaintiff,
                                                 1. Violations of California's Consumer
14       v.                                         Legal Remedies Act ("CLRA"), Cal.
                                                    Civ. Code § 1750, et seq.;
15                                               2. Violation of California's False
    BRP US, INC.; BOMBARDIER                        Advertising Law (Cal. Bus. Prof.
16  RECREATIONAL PRODUCTS, INC.;                    §§ 17200);
    and Does 1 through 10, inclusive,            3. Violation of California Unfair
17                                                  Competition Laws (Cal. Bus. &
                Defendants.                         Prof. Code § 17200);
18                                               4. Breach of Express Warranty;
19                                               5. Breach of Implied Warranty;
                                                 6. Breach of Written & Implied Warranty
20                                                  Under the Magnuson-Moss Warranty
                                                    Act (15 U.S.C. § 2301, *et seq.*); and
21                                               7. Breach of the Duty of Good Faith and
22                                                  Fair Dealing.
23
                                                 **DEMAND FOR JURY TRIAL**
24
25
26
27
28

-1-

Class Action Complaint
Case No. 5:19-cv-1830

# CLASS ACTION COMPLAINT

Plaintiff Jeffrey Shaw brings this action against Defendants BRP US, Inc., and BOMBARDIER RECREATIONAL PRODUCTS, INC. (collectively "BRP"), and Does 1 through 10 (collectively "Defendants"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## I    INTRODUCTION

1.    This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of current and former owners of Can-Am Maverick X3 Side-by-Side Vehicles, model years 2017 through 2019 ("Class Vehicles").[1]

2.    This action arises from BRP's misrepresentation in advertising and refusal to investigate, and repair or replace the Class Vehicles' defective rear suspension components.

### A.    Overview of BRP's Maverick X3 SSVs

3.    A Side-by-Side Vehicle ("SSV"), otherwise known as a recreational off-highway vehicle ("ROV"), is defined as a motorized vehicle designed for operation off of the highway, suspended on four tires or more tires, with a steering wheel for steering control, and having one seat to accommodate a driver and one passenger sitting side by side.[2] Generally, SSVs are segmented into two categories according to their intended use and design: Utility SSVs and Sporting/Recreation SSVs. Utility SSVs are marketed and sold as work vehicles; used by farmers or builders to haul materials like lumber or fertilizer. Whereas Sporting SSVs are designed and sold for purposes of off-road racing and recreation.

---

[1] The Can-Am Maverick X3 is a product line of Sporting SSVs which consists of six different vehicles models. For purposes of this complaint, the six models are collectively referred to as "the Maverick X3," "the Maverick," or "the X3."

[2] *See* https://www.cpsc.gov/Regulations-Laws--Standards/Voluntary-Standards/Recreational-Off-Highway-Vehicles/ [last accessed September 24, 2019].

Class Action Complaint
Case No. 5:19-cv-1830

1
2
3
4
5
6
7
8



9    4.    Defendant BRP US, INC. ("BRP"),  marketed and sold the Class Vehicles

10   as a Sporting SSVs, and intended for consumers to purchase and use them for racing

11   and off-road recreation. This is evident from the design of the Maverick X3,[3] but more

12   notably, BRP's advertisements and marketing. According to BRP, "[t]he X3 wasn't

13   built for leisurely drives in the countryside. It was built to make your eyeballs rattle in

14   your head."[4]

15   **B.    BRP's Misrepresentations in Marketing and Advertisements**

16   5.    In addition to highlighting speed, BRP draws consumers to purchase a

17   Maverick X3 by emphasizing its ability to drive over rugged terrain. BRP's marketing

18   tagline for the Maverick, states: "[the X3] doesn't see dunes, trails, and rocks as terrain.

19   It sees them as one big playground."[5] BRP specifically underscores the Maverick's

20   suspension, and its capability to withstand such activities, calling the trailing-arm:

21   "trophy truck-like." The veracity of these statements is *seemingly* affirmed for

22
23
24

25   [3] The Maverick X3 Turbo Xrs, the top-end of the X3 models, carries a 172-horsepower
26   engine. For comparison, a base model 2018 Honda Civic sedan comes equipped with a
     158-horsepower engine.

27   [4] *See* https://can-am.brp.com/off-road/2019/maverick-x3.html [last accessed October
28   28, 2018].

     [5] *Id.*

Class Action Complaint
Case No. 5:19-cv-1830

consumers through visual advertisements, which depict the Maverick soaring over high-speed jumps and ascending large boulders.





Class Action Complaint
Case No. 5:19-cv-1830



6.       However, such visual advertisements and marketing materials misrepresent the true quality and durability of the Maverick's suspension system. As these advertisements neither mention, nor indicate, that rear suspension components contain a manufacturing and design defect, which subjects entire suspension to catastrophic failure.

**C.    The Suspension Defect**

The Maverick X3 comes equipped with a 4-link suspension system; making up the rear suspension components of the system are (among other things) two trailing-arms, and a total of 6 hollow aluminum radius-rods.[6]

---

[6]  *See* https://can-am.brp.com/off-road/side-by-side/maverick-x3/maverick-x3-max-x-rs-turbo-r.html  [last accessed September 8, 2018].

1
2
3
4
5
6
7
8
9
10
11
12
13
14



**Maverick X3 Max Turbo Xrs Rear Suspension Package**

Radius-rods

Trailing-arms

15       7.     Based on information and belief, the rear suspension system of the
16 Maverick contains two defects (collectively referred to as "the Suspension Defect" or
17 "the Defect"). First, the Maverick's suspension is too soft. Even when driven at a low-
18 speed, the X3 is abnormally susceptible to bottoming-out. This can, and often does,
19 result in damage to the suspension components. Second, the radius rods and trailing-
20 arms are structurally weak; they are incapable of supporting the weight of the vehicle
21 itself and/or withstanding the Maverick's ordinary and intended use. These rear
22 suspension components can bend from minor impacts with small rocks, or from simply
23 driving over an uneven and unpaved surface. BRP could reasonably expect and foresee
24 that the Class vehicles would regularly encounter such scenarios.
25
26
27
28


Bent OEM Radius-Rods


Unbent Aftermarket Radius-Rods

**D.    BRP's Knowledge of the Suspension Defect**

8.    Based on information and belief, BRP had substantial knowledge of the Suspension Defect. Plaintiff, other Class Members, and dealers have provided BRP with well documented evidence of the failures discussed above. Moreover, numerous third-party manufactures have capitalized on the Defect by selling stronger aftermarket radius-rods. In fact, a number of these sellers highlight the defective nature and weakness of the Maverick's OEM suspension system.[7] If these indicators were not enough, BRP can look to the abnormalities in their rear suspension inventory for the Maverick. BRP certified dealers are overstocking the rear-suspension components in

---

[7] *See generally* https://www.agency-power.com/shop/agency-power-adjustable-rear-radius-rod-set-can-am-maverick-x3-rs/?v=7516fd43adaa ("the X3 and X3 Ma factory rear control arms are very weak being a hollow tube design.") [last accessed September 7, 2018; https://www.sxsnation.com/forum/threads/upgraded-can-am-x3-rs-rear-radius-rods.2211/ (" The factory rear control arms that come on X3 and X3 Max are very weak being a hollow tube design. These can easily bend from small rock hits on the trail or hard landings in the dunes. Having a total of 6 arms should be strong, but they are not up to standards and do not offer adjustability. ") [last accessed September 24, 2019.

Class Action Complaint
Case No. 5:19-cv-1830

anticipation that these parts will fail. And unsurprisingly, the rear suspension components for the Maverick were the only parts unavailable for purchase on BRP's website.[8]

**E.    BRP Denial of Warranty Claims**

9.    Plaintiff and Class Members have asked BRP to remedy the Suspension Defect and repair all resulting damage under expressed and implied warranty, but it has refused to do so. Ignoring the evidence, and without conducting any meaningful investigation, BRP asserts that failure of the suspension systems results from "collisions," "vehicle impacts, and/or "bottoming-out".

10.    Had Plaintiff and other Class Members known about the Suspension Defect at the time of purchase, they would not have bought Class Vehicles, or would have paid substantially less for them. Plaintiff and many Class Members also would have avoided the significant out-of-pocket costs they incurred for having to repair their SSV following the manifestation of the Suspension Defect.

11.    Accordingly, Plaintiff and the Class Members bring this lawsuit to seek recovery for BRP's breach of express and implied warranties and violations of the Magnuson-Moss Warranty Act.

## II    JURISDICTION

12.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

---

[8] *See* https://can-am.brp.com/off-road/shop/for-sale/parts-iframe.html [last accessed September 7, 2018.]

Class Action Complaint
Case No. 5:19-cv-1830

13.    This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of California and throughout the United States.

## III    VENUE

14.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, there are one or more authorized dealers within this district and Defendants have received substantial revenue and profits from their sales of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## IV    PARTIES

15.    Plaintiff Jeffrey Shaw is a citizen of the State of California, and currently resides in Menifee, California. Plaintiff owns a 2018 Can-Am Maverick X3 XRS ("the Vehicle"), which he purchased from Coyne Powersports – a certified dealership of BRP – in Banning, California on March 26, 2018.

16.    Defendant BRP US, Inc., is a corporation organized and in existence under the laws of the State of Delaware with its headquarters located in Sturtevant, Wisconsin. At all times relevant herein, BRP US Inc. was engaged in the business of importing, marketing, distributing, warranting, servicing, repairing, and selling SSVs in California, and throughout the United States of America.

17.    Defendants Bombardier Recreational Products, Inc. is a Canadian corporation with its corporate headquarters located in Valcourt, Quebec.

18.    BRP US Inc. and Bombardier Recreational Products, Inc. (collectively referred to as "BRP"), operate as a single entity for the purposes of designing, manufacturing, importing, marketing, distributing, warranting, servicing, repairing and selling various models of SSVs under the product name "Can-Am."

19.    In 2018, BRP reported that half of its revenue was derived from its sales in the United States and that it relocated its North American sales office to Texas to be closer and better connected to the U.S., its largest market.[9]

## V    PLAINTIFF SPECIFIC FACTUAL ALLEGATIONS

20.    On March 26, 2018, Plaintiff Jeffrey Shaw purchased a 2018 Maverick X3 Max Turbo X RS ("the Vehicle") from Coyne Powersports in Banning, California.

21.    Plaintiff paid approximately $32,000 for the Vehicle, and it came with a 6-month manufacturer limited warranty, which among other things, ensured coverage for the cost of replacement and/or repair of defective suspension parts.

### A.    The Vehicle's Catastrophic Suspension Failure

22.    On April 7, 2018, took the vehicle out to start the break-in period. While driving the Vehicle under low-speed conditions, Plaintiff heard a clicking sound coming from the suspension. He immediately called and texted "Kyle," an employee for Coyne Powersports, and notified him of the issue. Kyle said that he would "pass the information along to a service technician, but that the sound was probably just a result of the break-in period."

23.    On April 21, 2018, Plaintiff took the vehicle out again to a dirt field near his neighborhood to continue the break-in period. While driving the vehicle at a low speed, it experienced catastrophic right-rear suspension failure. The right trailing-arm had bent upwards, causing the tire to fold in and bend the radius rod, (depicted *supra at* ¶ 7). At the time, the Vehicle had approximately 6.7 hours of total driving time and only 122 miles on the odometer.

### B.    Plaintiff's First Warranty Claim Submission

24.    The following day, Plaintiff Shaw contacted Temecula Motorsports—an authorized and certified dealer located in Temecula, California—and provided them

---

[9] *See* https://www.cnbc.com/2018/03/21/globe-newswire-brp-reports-fourth-quarter-and-record-fiscal-year-2018-results.html [last accessed on November 13, 2018].

with eleven (11) photographs, which depicted the Vehicle's suspension failure, overall condition, and odometer reading.[10]

 

25.    On April 24, 2018, Rick, a service technician at Temecula Motorsports, submitted a warranty claim to BRP for the Suspension Defect. Less than 4 business days later, BRP denied the warranty claim. Neither Temecula Motorsports nor BRP had physically inspected the Vehicle. Despite this, BRP denied Plaintiff Shaw's warranty claim by using a self-serving narrative to avoid replacing and repairing the Vehicle's Suspension Defect.

_____

[10] Plaintiff Shaw provided Temecula Motorsports with exactly eleven photographs of the Vehicle, six of which were submitted with his first warranty claim. Based on information and belief, the photos included in this Complaint are two of the six (6) photos that Temecula Motorsports submitted to BRP.

26.    As justification for denying Plaintiff's warranty claim, BRP argued that the right rear wheel of the Vehicle endured a "side impact," which in turn caused that wheel to bend and the suspension to fail. But in a follow up email, sent less than three hours later, BRP deviated from its causation theory and asserted that the suspension failure was a result of the Vehicle "bottom[ing] out." The facts and evidence supported neither of these conclusions. The Vehicle showed no signs of an impact; the frame had no scratches, dents, or marks; the rims and tires were undamaged; and there were no dents on any of the suspension components. Moreover, Rick, a service technician at Temecula Motorsports, strongly disagreed with BRP's causal theory and the denial of Plaintiff Shaw's warranty claim.

27.    Through a series of emails sent to BRP, Rick argued that there was a "plain existence of a design or manufacturing defect." He had already seen eight (8) other instances of the same trailing arm bending, and because of the part's high failure rate, Temecula Motorsports was overstocking it. Rick further argued that given that the trailing arm on Plaintiff's Vehicle failed under low-speed driving conditions, "the suspension components are clearly too soft." Despite Rick's assessment and arguments, BRP chose to ignore evidence of the Suspension Defect, refused to inspect the Vehicle, and denied Plaintiff's warranty claim.

**C.    Plaintiff's Second Warranty Claim Submission**

28.    On May 3, 2018, Plaintiff Shaw returned the Vehicle to Coyne Powersports (where it was originally purchased) to have a visual inspection conducted and submit another warranty claim based on that information. Around two weeks later, Coyne Motorsports provided Plaintiff with a repair quote for $2,156.62 and informed him that BRP rejected his warranty claim.

29.    Through a series of phone calls, Plaintiff Shaw pleaded with BRP to reevaluate his claim in light of Coyne Motorsports physical inspection of the Vehicle, or alternatively, to conduct their own inspection. But BRP refused. According to a customer service representative, a physical inspection of the Vehicle was "futile."

-12-

Based on the pictures initially submitted by Temecula Motorsports, BRP had concluded that the suspension failure resulted from a large side impact; that conclusion was final.

30.    On May 24, 2018, Plaintiff mailed BRP and Coyne Motorsports a letter requesting a buyback of the Vehicle based on the evidence and facts stated above. His letter was met with a response, stating: "Based on the information as provided our corporation has no other alternative to deny any responsibility for this claim. . . . We invite you to forward to us additional information, namely an expert report demonstrating a manufacturing defect as alleged that would be the origin of this claim."

31.    Plaintiff, unable to pay the cost for repairs, paid the $170 diagnostic fee to have the Vehicle released to him from Coyne Motorsports. Moreover, Plaintiff has suffered an economic loss a result, because the defect has significantly minimized the Vehicle's resale value.

## VI    CLASS ALLEGATIONS

32.    Plaintiff brings this action on his own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class**:

All persons or entities in the United States who are current or former owners of a Class Vehicle.

33.    In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff seeks to represent the State Class only in the event that the Court declines to certify the Nationwide Class above. Specifically, the California Class consists of the following:

**California Class**:

All persons or entities in California who are current or former owners of a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a).

-13-

34.     Together, the California Class, and the Nationwide Class shall be collectively referred to herein as the "Class."  Plaintiff reserves the right to modify, change, or expand the Class definitions based on discovery and further investigation.

35.     **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all Members is impracticable. While the exact number and identities of individual Members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that hundreds of thousands of Class Vehicles have been sold in each of the states that are the subject of the Class.

36.     **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all Members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, whether:

    a.    the Class Vehicles were sold with the Suspension Defect;

    b.    Defendants knew of the Suspension Defect but failed to disclose the problem and its consequences to their customers;

    c.    a reasonable consumer would consider the Suspension Defect or its consequences to be material;

    d.    Defendants have failed to provide free repairs as required by their express warranty;

    e.    Defendants should be required to disclose the existence of the Suspension Defect; and

    f.    whether Defendants breached the convent of good faith and fair dealing by refusing to conduct a fair and impartial investigation of the Suspension Defect.

37.     **Typicality**: All of Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a vehicle with the same Suspension Defect as the Class Vehicles purchased by each member of the Class. Furthermore, Plaintiff and all Members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiff is

-14-

advancing the same claims and legal theories on behalf of himself and all absent Class Members.

38.    **Adequacy**: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class that he seeks to represent, he has retained counsel who are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

39.    **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and Members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Members of the Class individually to redress effectively the wrongs done to them. Even if the Members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, Members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

40.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

-15-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# VII

## FIRST CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") (Cal. Civ. Code § 1750, *et seq*.)

### (On Behalf of the Nationwide Class or, Alternatively, the California Class)

41.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

42.    Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class. Alternatively, Plaintiff Shaw brings this claim on behalf of himself and on behalf of the California Class against Defendants.

43.    Defendants are "persons" as that term is defined in California Civil Code § 1761(c).

44.    Plaintiff and the Class Members are "consumers" as that term is defined in California Civil Code §1761(d).

45.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class Members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

46.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public.

47.    Defendants knew that the Class Vehicles and suspension components were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

Class Action Complaint
Case No. 5:19-cv-1830

48.    Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles and the defective nature of the suspension components because:

a.    Defendants were in a superior position to know the true state of facts about the defect and associated repair costs in the Class Vehicles and the defective components of the suspension;

b.    Plaintiff and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles and the Suspension Defect until manifestation of the defect;

c.    Defendants knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the Suspension Defect and the associated repair costs that it causes until the manifestation of the defect; and

49.    In failing to disclose the Suspension Defect and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty to disclose.

50.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiff and the Class Members known about the Suspension Defect, they would not have purchased the Class Vehicles or would have paid less for them.

51.    Plaintiff Shaw provided Defendant BOMBARDIER RECREATIONAL PRODUCTS, INC., with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) on November 28, 2018. Plaintiff Shaw provided Defendant BRP US, INC., with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a) on September 16, 2019.

52.    Plaintiff and the other Class Members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

Class Action Complaint
Case No. 5:19-cv-1830

53.    Therefore, Plaintiff and the other Class Members seek injunctive and monetary damages under the CLRA as against Defendant BOMBARDIER RECREATIONAL PRODUCTS, INC. and seek only restitution and injunctive relief under the CLRA as against Defendant BRP US., INC.  Plaintiff will amend this complaint to seek monetary damages under the CLRA against Defendant BRP US., INC., after the 30-day notice period expires.

## VIII

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

## (Cal. Bus. Prof. Code § 17500, *et seq.*)

## (On Behalf of the Nationwide Class or, Alternatively, the California Class)

54.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

55.    Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class. Alternatively, Plaintiff brings this claim on behalf of himself and on behalf of the California Class against Defendants.

56.    California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

57.    Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of

reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff and the other Class Members.

58.    Defendants have violated section 17500 because the misrepresentations and omissions regarding the durability, reliability, and functionality of their Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

59.    Plaintiff and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing their Class Vehicles, Plaintiff and the other Class Members relied on the misrepresentations and/or omissions of Defendants with respect to the durability and reliability of the Class Vehicles. Defendants' representations were untrue because the Class Vehicles are distributed with defective rear suspension components, namely the trailing-arms and radius rods. Had Plaintiff and the other Class Members known this, they would not have purchased or leased their Class Vehicles or would not have paid as much for them. Accordingly, Plaintiff and the other Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

60.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

61.    Plaintiff, individually and on behalf of the other Class Members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class Members any money Defendants acquired by unfair

Class Action Complaint
Case No. 5:19-cv-1830

competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## IX

## THIRD CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200)

**(On Behalf of the Nationwide Class or, Alternatively, the California Class)**

62.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

63.    Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class. Alternatively, Plaintiff Shaw brings this claim on behalf of himself and on behalf of the California Class against Defendants.

64.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

65.    Defendants have engaged in unfair, deceptive, untrue, or misleading advertising by misrepresenting the Maverick X3 as being suited for the purpose stated above and misrepresenting the quality and nature of its suspension components.

66.    Plaintiff and the Class Members contend that the Class Vehicles suffer from a defect (and the costs and diminished value of the vehicles because of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the defect, and Plaintiff and Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

67.    The defective suspension system also constitutes a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

68.    These acts and practices have deceived Plaintiff and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiff and the Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and the Class Members, as it would have been to all reasonable consumers.

69.    The injuries suffered by Plaintiff and the Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class Members should have reasonably avoided.

70.    Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, and 1750 *et seq.*, California Commercial Code § 2313, and California Business and Professions Code 17500 *et seq.*

71.    Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

## X

## FOURTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

**(On Behalf of the Nationwide Class or, Alternatively, the California Class Class)**

72.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

73.    Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class or, alternatively, on behalf of each of the California Class.

74.    Defendants provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain. Accordingly, Defendants' warranties are express warranties under state law.

75.    The parts affected by the defect, including the trailing arms and radius rods, were distributed by Defendants in the Class Vehicles, and are covered by the warranties Defendants provided to all purchasers of Class Vehicles.

76.    Defendants breached these warranties by selling Class Vehicles with the defect and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

77.    Plaintiff notified Defendants of the breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure their breaches of written warranty would have been futile. Defendants also knew or should have known of the Suspension Defect and yet have chosen to conceal it and to fail to comply with their warranty obligations.

78.    As a direct and proximate cause of Defendants' breach, Plaintiff and the other Class Members bought Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value. Plaintiff and Class Members have also incurred and will continue to incur costs related to the diagnosis and repair of the defective trailing arms and radius rods.

79.    Plaintiff and the Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## XI

## FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

**(On Behalf of the Nationwide Class or, Alternatively, the California Class Class)**

80.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

81.    Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class or, alternatively, on behalf of each of the California subclass.

82.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

83.    Defendants provided Plaintiff and the other Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of recreational off-road driving, *inter alia*, the Class Vehicles and their suspension systems suffered from defective trailing are and radius rods that causes the vehicles to experience premature and catastrophic suspension failure. Therefore, the Class Vehicles are not fit for their particular purpose.

84.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their suspensions manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for off-road recreation and would not experience premature and catastrophic suspension failure; and (ii) a warranty that the Class Vehicles and their suspensions would be fit for their intended use while the Class Vehicles were being operated.

85.    Contrary to the applicable implied warranties, the Class Vehicles and their suspension at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

86.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

///
///
///
///

# XII

## SIXTH CAUSE OF ACTION

### BREACH OF WRITTEN & IMPLIED WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301, *et seq.*)

### (On behalf of the Nationwide Class or, Alternatively, the California Class Class)

87.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

88.    Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class or, alternatively, on behalf of the California Class.

89.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

90.    Plaintiff and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

91.    Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

92.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

93.    Defendants' 6-month Limited Manufacturer's Warranties are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

94.    Defendants breached the expressed and implied warranties as described in detail above. Plaintiff and each member of the Class have had sufficient direct dealings with either BRP or its agents (including dealerships) to establish privity of contract between BRP, on the on hand, and Plaintiff and each member of the Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each member of the Class are intended third-part beneficiaries of contracts between BRP and its dealers, and specifically, of BRP's implied warranties.

95.    As stated in detail above, Defendants breached the express and implied warranties by:

-24-

a.    Providing a 6-month Limited Manufacturer's Warranty, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner;

b.    Selling Class Vehicles with suspensions that were defective in materials and/or workmanship, requiring repair or replacement within the warranty period; and

c.    Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the suspension or any of its component parts in order to remedy the defective trailing arms and radius rods.

d.    Selling the Class Vehicles that were not fit for their intended and particular purpose of off-road recreation.

e.    Refusing to pay the costs to repair or replace the Suspension Defect of the Class Vehicles.

96.    Plaintiff and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase the Class Vehicles.

97.    Defendants' breach of the express warranties has deprived Plaintiff and the other Class Members of the benefit of their bargain.

98.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

99.    Defendants have been afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiff and the other Class Members were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged defect from the complaints and service requests it received from Class

Members, as well as from their own warranty claims, customer complaint data, and/or parts sales data.

100.   As a direct and proximate cause of Defendants' breach of the written warranties, Plaintiff and the other Class Members sustained damages and other losses in an amount to be determined at trial. Defendants' conduct damaged Plaintiff and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## XIII

## SEVENTH CAUSE OF ACTION

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

## (On Behalf of the Nationwide Class or, Alternatively, the California Class Class)

101.   Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

102.   Plaintiff brings this claim on behalf of himself and on behalf of the Nationwide Class or, alternatively, on behalf of the California Class.

103.   All contracts in California contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

104.   Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiff and Class Members of the Suspension Defect in the Class Vehicles, and failing to fully and properly repair this defect.

105.   Defendants acted in bad faith to deny Plaintiff and the Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and Members of the Class, respectfully request that this Court:

A.   determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.   award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiff and the Class Members are entitled, but award only restitution and injunctive relieve, pursuant to California Civil Code § 1780, as against Defendant BRP US, Inc., at this time;

C.   appoint Plaintiff as the representatives of the Class and their counsel as Class counsel;

D.   award injunctive and equitable relief in the form of comprehensive program to repair, modify, and/or buy back all Class Vehicles, and to fully reimburse and make whole all Class Members for all costs and economic losses resulting from the Suspension Defect.

E.   Award injunctive and equitable relief in the form of extending the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Suspension Defect;

F.   award pre-judgment and post-judgment interest on such monetary relief;

G.   grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class vehicles and

1   H.   award reasonable attorneys' fees and costs; and

2   I.   grant such further relief that this Court deems appropriate.

3

4   Dated:  September 24, 2019                    Respectfully submitted,

5                                                 MCCUNE WRIGHT AREVALO LLP

6                                        By:   /s/ David C. Wright

7                                                 David C. Wright

8                                                 Mark I. Richards

9                                                 Attorneys for Plaintiff and Putative Class

## JURY DEMAND

10

11        Plaintiff, on behalf of himself and the putative Class, demand a trial by jury on all

12  issues so triable.

13                                                 MCCUNE WRIGHT AREVALO LLP

14                                       By:   /s/ David C. Wright

15                                                 David C. Wright

16                                                 Mark I. Richards

                                                   Attorneys for Plaintiff and Putative Class

17

18

19

20

21

22

23

24

25

26

27

28

-28-